IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 08-cv-02575-RPM

TANYA HARRISON,

    Plaintiff,

v.

GEICO Casualty Company,

    Defendant.

---

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Tanya Harrison ("the Plaintiff") is an insured under automobile insurance Policy No. 4059934739 ("the Policy"), issued by GEICO Casualty Company ("GEICO" or "the Defendant") on February 21, 2006. On March 30, 2006, the Plaintiff, while driving an automobile covered by the Policy, was injured in a traffic accident caused by another driver ("the tortfeasor"). At the time of the accident, the Plaintiff's Policy afforded coverage for bodily injury ("BI") with limits of $25,000 per person/$50,000 per occurrence and uninsured/underinsured motorist coverage ("UM/UIM") with limits of $25,000 per person/$50,000 per person. The tortfeasor had liability coverage with limits of $25,000 per person/$50,000 per occurrence. The tortfeasor's insurer tendered the limits of that policy ($25,000).

The Plaintiff claims that she has incurred medical expenses, loss of earnings, pain and suffering, and other damages exceeding $25,000 as a result of the accident. The Plaintiff sought payment of UM/UIM benefits from GEICO under her own Policy. Under the Plaintiff's Policy,

"underinsured motor vehicle" is defined in relevant part to mean "a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the limits of liability under this Coverage . . . ." According to that definition, the tortfeasor was not underinsured and the Plaintiff is not entitled to UM/UIM benefits.

The Plaintiff filed this action in November 2008, seeking reformation and a declaration that the UM/UIM coverage limits of her Policy are $100,000 per person/$300,000 per occurrence. Federal jurisdiction is based on diversity of citizenship. The substantive law of Colorado governs this dispute.

The Plaintiff alleges that when she purchased the Policy, GEICO did not comply with C.R.S. § 10-4-609(2) (2006), which provides in relevant part:

> Prior to the time the policy is issued or renewed, the insurer shall offer the named insured the right to obtain higher limits of uninsured motorist coverage in accordance with its rating plan and rules, but in no event shall the insurer be required to provide limits higher than the insured's bodily injury liability limits or one hundred thousand dollars per person and three hundred thousand dollars per accident, whichever is less.[1]

The Plaintiff contends that if GEICO had made a statutorily compliant offer before the Policy issued, she would have elected to purchase UM/UIM coverage at the $100,000/$300,000 level. She seeks reformation of her Policy to achieve that result and to obtain payment from GEICO for her injuries and damages resulting from the accident, including "personal injury, pain and suffering, mental anguish, loss of capacity to enjoy life, loss of earnings, loss of earning

---

[1] After the issuance of the subject Policy, C.R.S. §10-4-609(2) was amended. The current version of the statute is not applicable because it applies to policies issued after January 1, 2008, the effective date of the amendment.

capacity, medical bills, and interest" and the costs and expenses of this action. (Am. Compl., Wherefore Clause.)

GEICO denies the Plaintiff's claims. On May 8, 2009, GEICO moved for summary judgment in its favor, arguing that the Plaintiff received the statutorily required notification and offer before the Policy issued, when she shopped for rate quotes on GEICO's website, www.geico.com.

The following facts are not in dispute:

The Plaintiff purchased the Policy during a telephone transaction on February 20, 2006. Before that telephone conversation, the Plaintiff accessed www.geico.com and obtained rate quotes from it.

To obtain rate quotes from www.geico.com, an applicant must select from various coverage options. The choices provided include the option to select UM/UIM coverage with limits of $100,000 per person/$300,000 per occurrence. When selecting coverages, an on-line applicant would see a page that provides the following definition of "uninsured motorist bodily injury" coverage:

> **What is Uninsured Motorist Bodily Injury?**
> Uninsured Motorist Bodily Injury typically pays for you and your passengers'
> bodily injury damages caused by an uninsured driver.
> Learn more about Uninsured Motorist Bodily Injury.

(Def.'s Ex. A-11 at GEICO_00333.) The Plaintiff acknowledges that this definition of uninsured motorist bodily injury was provided. (Pl.'s resp. br. at 7-8.)

Elizabeth Reynolds, a Senior Applications Systems Analyst for GEICO, states in an affidavit that this page also would have provided the following description of UM/UIM coverage:

> What is Uninsured/Underinsured Motorist Coverage?
> Uninsured/Underinsured Motorist coverage will pay for your injuries caused by an uninsured or, in some states, a hit-and-run driver. Given the number of uninsured motorists driving on our highways today, this is very important coverage to have, even in states with no-fault insurance. This coverage is subject to the terms, limits and conditions of the policy contract.
> Depending on the policy limits you choose, you may be required to sign an Option Form after you purchase your policy. For your convenience, you may sign the form electronically or you may choose to sign a paper copy of the Option Form which will be included in your new policy package.

(Def.'s Ex. A, Reynolds Aff. ¶ 11.) The attachments to Reynold's affidavit do not include a screen page showing this information. There is no evidence that the Plaintiff viewed it. The definition of Uninsured Motorist Bodily Injury shown on Exhibit 11 to Reynolds' affidavit apparently includes a link (the underlined phrase "Learn more about Uninsured/Underinsured Bodily Injury") which, *if followed*, allows an applicant to view the more detailed description of Uninsured/Underinsured Motorist Coverage. Reynolds does not state that an applicant must view this description of UM/UIM coverage to obtain a rate quote.

During the Plaintiff's first use of the website, she obtained a rate quote, but did not complete the process to purchase the selected insurance. During the Plaintiff's second use, she obtained five rate quotes for various combinations of coverages. The first three quotes did not include UM/UIM coverage. The fourth and fifth quotes included UM/UIM coverage at the $25,000/$50,000 level. The Plaintiff followed the steps to complete the on-line purchase of a policy providing the following coverages for two vehicles: BI coverage with limits of $25,000 per person/$50,000 per occurrence; UM/UIM coverage with limits of $25,000 per person/$50,000 per occurrence; Property Damage coverage of $15,000, and Uninsured Motorist Property Damage coverage with a $250 deductible.

The Plaintiff's attempted on-line purchase was not completed.  GEICO reviewed the motor vehicle records for the Plaintiff and the other driver for whom she sought coverage.  On February 20, 2006, GEICO sent the Plaintiff an email informing her that it would not be able to offer her the rate quoted on the website. (Def.'s Ex. A-22.)  The email stated, "Please contact our Sales Department at 1-800-861-8380 anytime 24 hours a day, 7 days a week so we can discuss what rates may be available to you." (*Id.*).  On February 20, 2006, the Plaintiff contacted GEICO by telephone and completed the process to purchase the subject Policy.

The applicable version of C.R.S. § 10-4-609(2) imposes "a one-time duty upon an insurer to notify an insured of the nature and purpose of UM/UIM coverage and to offer the insured the opportunity to purchase such coverage in accordance with the insurer's rating plan and rules and in an amount equal to the insured's bodily injury liability limits but in no event in excess of $100,000 per person and $300,000 per accident, whichever is less." *Allstate Ins. Co. v. Parfrey*, 830 P.2d 905, 913 (Colo. 1992).  "Subsection (2) requires an insurer to do more than merely make UM/UIM coverage available at a level higher than the minimum motor vehicle liability limits of $25,000 per person and $50,000 per accident. . . . "[A]n insurer's duty of notification and offer must be performed in a manner reasonably calculated to permit the potential purchaser to make an informed decision on whether to purchase UM/UIM coverage higher than the minimum statutory liability limits . . . ." *Id.*

Factors relevant to the determination of whether the insurer complied with the statute include "the clarity with which the purpose of UM/UIM coverage was explained to the insured, whether the explanation was made orally or in writing, the specificity of the options made known to the insured, the price at which the different levels of UM/UIM coverage could be purchased,

-5-

and any other circumstances bearing on the adequacy and clarity of the notification and offer." *Parfrey*, 830 P.2d at 913. "The dispositive consideration is whether, under the totality of circumstances, the insurer's notification and offer to the insured adequately informed the insured that UM/UIM coverage was available in accordance with the insurer's rating plan and rules and in an amount equal to the insured's bodily injury liability limits but in no event in excess of $100,000 per person and $300,000 per accident, whichever is less." *Id.* at 914, n.5. In *Parfrey*, the Colorado Supreme Court explained:

> [the insurer] would be entitled to judgment as a matter of law only if [the insurer], prior to the issuance of the policy . . . or on one of the subsequent occasions when coverage was modified or the policy was renewed, adequately notified the [plaintiffs] that they had the right to obtain UM/UIM coverage higher than the minimum liability limits of $25,000 per person and $50,000 per accident and that they could do so by increasing their liability coverage and purchasing UM/UIM coverage in the same amount as their increased liability coverage up to $100,000 per person and $300,000 per accident.

*Id.* at 914.

GEICO's statutory responsibility under C.R.S. § 10-4-609(2) was not met by information available from [www.geico](www.geico). There is no evidence that the Plaintiff viewed any explanation of UM/UIM coverage other than the brief definition of uninsured motorist bodily injury. In addition, the pricing options that the Plaintiff viewed on-line were not actually available to her. GEICO's email, dated February 20, 2006, stated that GEICO would not be able to offer the Plaintiff the rate quoted during the on-line session. GEICO's obligation was to explain the coverages and rate structures offered to the Plaintiff during the telephone sales transaction and to do so with enough clarity to enable her to make an informed decision about whether to purchase UM/UIM coverage with limits higher than the minimum statutory liability limits. GEICO does not assert that it communicated the required information during the telephone transaction.

GEICO was not relieved of its statutory obligation by the Plaintiff's selection of the minimum bodily injury coverage required by statute. *See Loar v. State Farm Mut. Auto. Ins. Co.*, 143 P.3d 1083, 1086 (Colo. App. 2006) ("Section 10-4-609(2) does not make the [insurer's] obligation contingent upon the insured's purchase of bodily injury insurance in excess of the statutory minimum.")

Accordingly, it is

ORDERED that the Defendant's motion for summary judgment [23] is denied.

Dated: May 19, 2010

BY THE COURT:

s/Richard P. Matsch

Richard P. Matsch, Senior District Judge